IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**LORENDA MOODY,** *et al.*,

    Plaintiffs

v.      CIVIL NO. JKB-09-3228

**THE ARC OF HOWARD COUNTY, INC.,** *et al.*,

    Defendants

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Lorenda Moody and Clarence Weefur ("Plaintiffs") brought this suit against The Arc of Howard County, Inc., Debbie Wagner, and Naomi Lyvers ("Defendants"), alleging age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"). Defendants now move to exclude certain witness depositions from evidence, for summary judgment, and for sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927. As to the matters here decided, the issues have been briefed and no oral argument is required. Local Rule 105.6. For the reasons explained below, Defendants' Motion For Summary Judgment (ECF No. 34) is GRANTED; the Motion To Quash (ECF No. 30) is DENIED AS MOOT; and, the Motion For Sanctions (ECF No. 32) is DENIED IN PART and SET IN FOR HEARING IN PART.

### I. BACKGROUND

#### A. The Parties

Defendant Arc of Howard County ("The Arc") is a nonprofit charity that works to support Howard County's mentally disabled population. (Def.'s Mem. Summ. J. 2, ECF No. 34-

1

1). Defendant Debbie Wagner is The Arc's Associate Executive Director, and Defendant Naomi Lyvers is its Director of Human Resources. (Pl.'s Resp. Sanctions 5, ECF No. 36-1). Plaintiffs Lorenda Moody, age 66, and Clarence Weefur, age 63, are former employees of Defendants, who were terminated for alleged negligence.

B. **Plaintiffs' Employment and Termination**

During their employment, Plaintiffs' duties included picking up elderly, mentally disabled patients from several group homes each morning, supervising them in various activities, and driving them back to their homes. (Moody Dep. 203-204, ECF No. 34-21). On the morning of May 13, 2009, Plaintiffs made their usual stop at the Cloudburst residence, which was home to two of The Arc's patients. *Id* at 18: 9-11. One of the patients, Denise Pickett, was not at the stop that morning because of a dental appointment. (Moody Dep. 64:19-65:2). Plaintiffs, however, did not notice Ms. Pickett's absence and mistakenly believed that they had picked her up. (Moody Dep. 43:6-14); (Weefur Dep. 19-5-10, 25-15-18, ECF No. 34-22).

After picking up their other patients, Plaintiffs brought them to The Arc for their activities. Shortly after arriving at The Arc, at about 10:00 A.M., Moody noticed for the first time that Ms. Pickett was not present. *See* (Moody Dep. 18:24-19:3). Still believing that Pickett had boarded the van that morning, Moody assumed that she must have been somewhere at The Arc. (Compl. 4); (Moody Dep. 65:17-22). When she could not find Pickett anywhere in the building, Moody found Weefur and told him that Pickett was missing. Weefur and Moody then informed their supervisor, Rhonda Braswell, of the situation.

When she learned that Ms. Pickett was missing, Braswell asked Moody if she was sure that she and Weefur had transported Ms. Pickett that morning, noting that Pickett's transportation services had been cancelled that day. (Moody Termination Letter, ECF No. 43-

13, Ex. 10); (Weefur Termination Letter, ECF No. 34-14, Ex. 11). Moody responded not only that they had picked up Ms. Pickett, but also that she was wearing a pink shirt and that she had asked to use the restroom when the group arrived at The Arc. (Weefur Dep. 57:4-13). Weefur did not dispute Moody's story, as he too still believed that they had brought Ms. Pickett to The Arc that morning. *Id* at 57:21-58:13. Moody, Weefur, Braswell, and several other staff members then began to search the premises for Ms. Pickett. After about 45 minutes of searching, one of the employees spoke on the phone with the Cloudburst house manager, Betty Caldwell, who reported that Ms. Pickett was safely at home with her, and that she had never boarded Plaintiffs' van. (Weefur Dep. 58:2-13).

### C.     Plaintiffs' Discipline and Termination

Sometime after Ms. Pickett was located, Defendants admonished both Moody and Weefur for losing track of a patient in their care. Two days later, on May 15, 2009, Defendants informed Plaintiffs by telephone that their employment would be terminated because of their alleged negligence in losing track of Ms. Pickett. (Letters of Termination). On May 21, 2009, Defendants mailed letters of termination to Plaintiffs, stating their reasons again in writing. *Id*. The letters set out the details of the incident, and stated that Plaintiffs' actions had raised "serious concern about [their] ability to be responsible for the individuals left in [their] care on a daily basis." *Id*. The letters concluded by stating that Plaintiffs' terminations were based on "the aforementioned information and [their] inability to confirm or deny Denise's attendance on the van that morning..." *Id*.

### D.     Plaintiffs' EEOC Filings

Plaintiffs allege that on July 23, 2009, they completed and signed substantively identical charges of age discrimination, which Weefur then mailed to the EEOC in the same envelope.

(Pl.'s Resp. 3). On August 6, 2009, Defendants received a Notice of Charge of Discrimination from the EEOC, stating that Weefur had submitted an "inquiry," which was "minimally sufficient to constitute a charge of employment discrimination," but that the inquiry had not been formally docketed as a charge. (Notice of Charge, ECF No. 34-19, Ex. 16). It explained that Defendants would be served with another notice regarding whether or not the inquiry had "become a charge." *Id*. The notice said nothing about Moody.

Defendants never received further notice regarding Weefur's charge, nor any notice of a charge by Moody. (Def.'s Mem. Summ. J. 13). When defense counsel requested copies of the EEOC's records regarding Moody's case under the Freedom of Information Act, the EEOC denied the request, stating "We have no records for Charging Party Lorenda Moody and no charge number was given. We could not locate the records needed." (FOIA Response, ECF No. 34-17, Ex. 14).

On October 13, 2009, the EEOC sent a Form 5 Charge of Discrimination directly to Plaintiffs' counsel, along with a letter stating that the form must be signed and returned before the EEOC could begin investigation of the charge. But, neither Plaintiffs nor their counsel signed or returned the form. (Weefur Dep. 47:23-48:22); (Moody Dep. 255-256).

### E. Plaintiffs' Complaint

Plaintiffs filed the instant complaint on December 3, 2009, naming The Arc, Debbie Wagner, and Naomi Lyvers as defendants. (Compl., ECF No. 1). The complaint contains a single count of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, and requests $435,571.60 in compensatory damages, and $1,306,714.80 in punitive damages. The compensatory portion of the request includes non-economic damages for mental anguish. *Id* at 8.

### F. Discovery and Motions

Defendants deposed Weefur on January 31, 2011, and Moody on February 3, 2011. Among other things, Plaintiffs confirmed the version of events set out in their termination letters. They admitted that they mistakenly believed they had picked up Ms. Pickett and brought her to The Arc, that Moody noticed when they arrived that Ms. Pickett was absent and looked for her throughout the building, that they notified Rhonda Braswell that Ms. Pickett was missing, that Moody told Braswell that Pickett was wearing a pink shirt and had asked to go to the bathroom, and that she and several other staff members looked for Pickett until it was discovered that she was at home with her house manager, Ms. Caldwell. (Moody Dep. 19, 42:12-43:14, ); (Weefur Dep. 17-19, 22, 56-58). Additionally, Weefur testified that he did not have personal knowledge of any facts or evidence to support his claim of age discrimination, and Moody indicated she had no personal knowledge of any younger employees who were disciplined less harshly for similar conduct. (Weefur Dep. 109); (Moody Dep. 148-151).

Several weeks after the depositions, on February 22, 2011, Defendants served Plaintiffs with notice of their intent to file a motion for sanctions under Rule 11 if Plaintiffs did not withdraw their complaint. (Def.'s Mem. Sanctions 2, ECF No. 32-1). Defendants alleged four grounds for sanctions: (1) Plaintiffs failed to exhaust their administrative remedies; (2) Plaintiffs had no factual basis for their claims of age discrimination; (3) Plaintiffs unlawfully sued private individuals under the ADEA; and (4) Plaintiffs had unlawfully demanded non-economic compensatory damages. Exactly 21 days later, Plaintiffs withdrew their demand for non-economic damages, but declined to otherwise change their position. *Id.*

Discovery closed on March 11, 2011. On March 14, Plaintiffs moved to extend discovery, but the Court denied the motion. Shortly thereafter, Defendants filed the instant

motions to exclude evidence, for summary judgment, and for sanctions against Plaintiffs, plaintiffs' counsel, and counsel's law firm.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Fed. R. Civ. P. 56(a) directs district courts to grant summary judgment if the moving party shows "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." If the moving party carries this burden, then summary judgment will be denied only if the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). To carry these respective burdens, each party must support its assertions by citing particular parts of materials in the record constituting admissible evidence. Fed. R. Civ. P. 56(c)(1)(A). The court will then assess the merits of the motion, viewing all facts and reasonable inferences in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

### B. Fed. R. Civ. P. 11

Fed. R. Civ. P. 11(b) states in pertinent part:

By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery...

A court considering sanctions under Rule 11 must evaluate an attorney's conduct under a standard of objective reasonableness. *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002). Conduct violates Rule 11 if an objectively reasonable attorney "in like circumstances could... [not] have believed his actions to be legally justified." *Id.* (internal quotations omitted). Specifically, a legal contention violates Rule 11 when it "has absolutely no chance of success under the existing precedent," and any "reasonable attorney would recognize it as frivolous." *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998). A district court's decision to impose sanctions is discretionary. *Chaudry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir. 1999).

### C.  28 U.S.C. § 1927

28 U.S.C. § 1927 states:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

To impose sanctions under this statute, the court must find that the attorney has acted in bad faith and that his actions have resulted in excess costs for the opposing party. *Thomas v. Ford Motor Co.*, 244 Fed. App'x. 535, 539 (4th Cir. 2007). If the court so finds, the decision to impose sanctions is discretionary. *Salvin v. American Nat. Ins. Co.*, 281 Fed. App'x. 222, 225.

## III. ANALYSIS

### A. Summary Judgment[1]

In support of their motion for summary judgment, Defendants contend, *inter alia*, that Plaintiffs have failed to adduce sufficient evidence to prove age discrimination under the ADEA. The Court agrees.

To succeed on an ADEA claim, "a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but for' cause of the challenged employer decision." *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2351 (2009). Where a plaintiff elects to rely on circumstantial evidence, courts in this circuit analyze the claim under the familiar *McDonnell-Douglas* burden-shifting framework. *Bodkin v. Town of Strasburg*, 386 Fed App'x. 411, 413-414 (4th Cir. 2010). To make a *prima facie* case under *McDonnell-Douglas*, a plaintiff must show, among other things, that he was meeting his employer's legitimate expectations at the time of the challenged employment action. *Id*. Importantly, this element cannot be established if the plaintiff admits to the performance or conduct problems that led to his discharge. *See Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 298 (4th Cir. 2004). Furthermore, even if a plaintiff succeeds in making out a *prima facie* case, he must still demonstrate that any legitimate explanation offered by the employer is a pretext for discrimination. *Id* at 285.

---

[1] As discussed below, Defendants' allegations regarding Plaintiffs' alleged failure to exhaust their administrative remedies raise doubts as to this Court's subject matter jurisdiction. The Court proceeds directly to the merits, however, without resolving the jurisdictional issue, because it finds that Plaintiffs' assertion of jurisdiction, while questionable, is not so frivolous as to warrant dismissal under Rule 12(b)(1). *See Kerns v. U.S.*, 585 F.3d 187, 193 (4th Cir., 2009) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)) ("A trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are clearly immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous.") (internal quotations omitted). Because the Court declines to dismiss the case on jurisdictional grounds, it is entitled to assume jurisdiction and proceed to the merits. *Id* at 193, n.6.

Here, because Plaintiffs have admitted the misconduct that Defendants cited as the reason for their termination, they cannot show that they were meeting Defendants' legitimate expectations. Plaintiffs' letters of termination offer the following facts as the basis for their discharge: that Plaintiffs arrived at the Arc on the morning of May 13, 2009 without Ms. Pickett; that Moody began looking for Ms. Pickett throughout the building, believing she was missing; that Moody notified her supervisor, Rhonda Braswell, when she could not find Ms. Pickett; that Moody told Braswell that she and Weefur had picked up Ms. Pickett and brought her to the Arc, and that she was wearing a pink shirt and had asked to go to the bathroom; and, that Plaintiffs, Braswell, and several other staff searched for Ms. Pickett until they learned from the Cloudburst house manager that she was safely at home. *Id.* Plaintiffs have admitted every one of these facts, and have even testified to their subjective beliefs that their loss of Ms. Pickett could have led Defendants to conclude that they were not capable of doing their jobs, and that it was likely a factor in their terminations. (Weefur Dep. 81:19-24); (Moody Dep. 205:18-25)

Plaintiffs therefore cannot establish a *prima facie* case of age discrimination under the *McDonnell-Douglas* framework. The only alternative means by which Plaintiffs could raise a triable issue of fact would be to offer direct evidence that their age actually motivated Defendants' decision to fire them. As discussed further below, Plaintiffs have identified no such evidence. Defendants are thus entitled to summary judgment.[2]

**B.  Motion To Quash**

In view of the Court's award of summary judgment, Defendants' motion to quash is moot.

---

[2] Defendants Wagner and Lyvers are also entitled to summary judgment on the alternative grounds that they are not proper defendants to this suit. *See infra*.

C.  **Sanctions**

Defendants ask this Court to impose sanctions on Plaintiffs, their counsel, and counsel's firm pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 on the following grounds: (1) Plaintiffs failed to exhaust their administrative remedies by filing formal charges of age discrimination with the EEOC prior to filing this suit; (2) Plaintiffs have no evidence of age discrimination; (3) Defendants Wagner and Lyvers, as individuals, are not liable under the ADEA; and (4) Plaintiffs initially sought damages that are unrecoverable under the ADEA as a matter of law.

As an initial matter, the Court denies Defendants' motion in the following respects: (1) the Court will not consider imposing sanctions on Plaintiffs Lorenda Moody or Clarence Weefur, as it finds them to have relied entirely on the advice of counsel in electing to continue to press ahead with this lawsuit; (2) the Court will consider imposing sanctions on Plaintiffs' counsel, Jason Ostendorf, but only with regard to conduct beginning 21 days after he received Defendants' Notice of Rule 11 Violations (ECF Nos. 32-11 & 32-12); (3) as Defendants have not alleged that Plaintiffs' counsel acted in bad faith, the Court will not consider imposing sanctions under § 1927, *See Thomas v. Ford Motor Co.*, 244 Fed. App'x. at 539 ("Section 1927 requires a finding of counsel's bad faith as a precondition to the imposition of fees") (internal quotations omitted); and, (4) the Court will set in for hearing any remaining matters raised by Defendants that appear to support the imposition of sanctions, and will issue a final ruling only upon the conclusion of such hearing. With these limitations in mind, the Court will address Defendants' arguments in turn.

1. **Damages**

Plaintiffs initially sought to recover $400,000 in compensatory damages for mental anguish, which are not recoverable under the ADEA as a matter of law. *C.I.R. v. Chleier*, 515

U.S. 323, 326 (1995), *superseded by statute on other grounds*. However, Plaintiffs withdrew their demand on March 15, 2011, exactly 21 days after Defendants served them with notice of their intent to file this motion. (Def.'s Mem. Sanctions 11-12, 16). Because Plaintiffs withdrew their demand within the 21 day "safe harbor" provided by Rule 11, the demand is not sanctionable under that rule. *See Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004).

### 2. Individual Liability

Plaintiffs' complaint names two individual Arc employees, Debbie Wagner and Naomi Lyvers, as defendants. Defendants argue that Plaintiffs' counsel violated Rule 11 by maintaining this suit against Wagner and Lyvers because settled case law establishes that the ADEA does not create a right of action against individual employees. Plaintiffs argue in response that Wagner and Lyvers are liable as agents of the Arc, because the ADEA defines *employer* to include an employer's *agents*. (Pl.'s Resp. Sanctions 5).

Notwithstanding the ADEA's reference to *agents*, the Fourth Circuit has consistently held that individuals are not proper defendants to ADEA suits. *See, e.g., Jones v. Sternheimer*, 387 Fed. App'x. 366, 368 (4th Cir. 2010); *McNeal v. Montgomery County*, 307 Fed. App'x. 766, 775 n.6 (4th Cir. 2009); *Jiggetts v. Sharpe*, 141 Fed. App'x. 162, 163 (4th Cir. 2005). Indeed, the Fourth Circuit rejected Plaintiffs' interpretation of the ADEA more than a decade ago in *Birkbeck v. Marvel Lighting Corp.*, where it held that the reference to *agents* was merely "an unremarkable expression of *respondeat superior*," which Congress intended only to clarify that employers are liable for the discriminatory acts of their employees, not to create liability for the employees themselves. In view of this well-settled authority, Plaintiffs' argument, and their claims against Wagner and Lyvers, are without any basis in law.

11

Furthermore, the Court is particularly troubled by the fact that Plaintiffs' counsel refused to voluntarily dismiss the case against Wagner and Lyvers after Defendants supplied him with the relevant case law in their Notice of Rule 11 Violations (ECF Nos. 32-11 & 32-12). Also troubling is the fact that Plaintiffs' counsel argued to this Court that Wagner and Lyvers were liable under the ADEA as The Arc's *agents* even though Defendants' Notice specifically referred him to the *Birkbeck* decision, which flatly rejects this construction of the Act. Counsel's conduct in this regard appears to have been objectively unreasonable, at the least. Accordingly, the matter will be set in for a hearing to determine whether sanctions should be imposed on Plaintiffs' counsel for persisting with the claims against Defendants Wagner and Lyvers after receiving Defendants' Notice of Rule 11 Violations.

### 3. Exhaustion of Administrative Remedies

The ADEA requires prospective plaintiffs to file charges of age discrimination with the EEOC at least 60 days before bringing a suit in federal court. 29 U.S.C. § 626(d)(1). Defendants allege that a reasonable inquiry by Plaintiffs' counsel would have revealed that Plaintiffs never filed formal charges with the EEOC, and that this Court therefore has no subject matter jurisdiction over Plaintiffs' case. Plaintiffs concede that they did not file an EEOC Form 5 Charge of Discrimination, which is the official document that complainants must sign in order to initiate an investigation. However, Plaintiffs allege that they filed a different form, called an Intake Questionnaire ("IQ"), in which they provided information about themselves, their employer, and the nature of their allegations. Further, Plaintiffs allege that the EEOC refers to Weefur's IQ as a "minimally sufficient charge" in a document provided to Defendants during discovery. Weefur has submitted an affidavit, swearing that he personally mailed both his and Moody's IQs to the EEOC in the same envelope. Defendants do not dispute that Weefur filed

his own IQ, as he has produced a signed copy, date-stamped by the EEOC. Moody, however, has not been able to produce a signed copy of her IQ, and the EEOC has no record of ever receiving any documents from her. Defendants maintain that, in light of these facts, Moody cannot show that she filed an IQ. Even if she could, Defendants also maintain that an IQ is not a *charge* under the ADEA. Plaintiffs maintain that an IQ is a charge and that Weefur's affidavit regarding his mailing of the IQs creates a factual dispute, which must be decided by a jury.

The Court does not find Plaintiffs' argument in this regard to be frivolous. As an initial matter, both parties have failed to identify and apply the relevant case law. The question of whether an IQ may serve as a charge under the ADEA was decided by the U.S. Supreme Court in *Federal Express v. Holowecki*, 128 S.Ct. 1147, 1157-58 (2008). There, the Court held that an IQ may serve as a charge if: (1) it contains the information required by EEOC regulations, "i.e., an allegation and the name of the charged party"; and, (2) it can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id*. Weefur's IQ names the Arc as the charged party, alleges age discrimination, and has an "x" marked next to a statement that reads in pertinent part, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." (Weefur IQ 4, ECF No. 36-8, Ex. 7). Without deciding the matter, the Court finds that an objectively reasonable attorney could have concluded that such a document constituted a charge under the *Holowecki* standard.

Secondly, the Court also finds that counsel's assertion of subject matter jurisdiction over Moody's claim is not objectively unreasonable. The purposes of the ADEA's filing requirement, like those of other civil rights statutes, are to put the charged party on notice and to facilitate conciliation by the EEOC. *Zhang v. Science & Technology Corp.*, 332 F.Supp.2d 864, 867 (D.

Md., 2004). Under certain circumstances, where these purposes are sufficiently achieved, courts will allow plaintiffs to proceed with suits against defendants not named in their EEOC charges. *Id*. It is not inconceivable that the factors that would justify such an allowance, namely an identity of interest between named and unnamed parties, receipt of notice of the EEOC charge by the unnamed party, and absence of prejudice, might also justify allowing the addition of an unnamed plaintiff. Here, Plaintiffs' counsel received correspondence from the EEOC stating that it had received a "minimally sufficient" charge of discrimination against The Arc and that it had notified The Arc of the charge. In light of this representation, an objectively reasonable attorney could have concluded that, even if the EEOC never received Moody's charge, a federal court could still exercise jurisdiction over her claim on the grounds that The Arc was already on notice of an identical claim, and that the EEOC had already had an opportunity to conciliate.[3]

For these reasons, the Court will not impose sanctions based on Plaintiffs' alleged failure to exhaust their administrative remedies.

### 4. Legal and Factual Bases of Claims

Defendants maintain that Plaintiffs' testimony that they have no personal knowledge of facts or evidence relating to age discrimination shows conclusively that their claim is meritless. From this, they argue that Plaintiffs' counsel violated Rule 11 by refusing to voluntarily dismiss the case after Plaintiffs gave their depositions. Plaintiffs' personal knowledge, however, is not determinative of whether or not evidence exists that, as a legal matter, might support their claims, and the Court is therefore reluctant to give dispositive legal effect to their testimony. Instead, the Court will look to the facts alleged in the complaint, and in Plaintiffs' responses in opposition to sanctions and summary judgment to determine whether the alleged evidentiary

---

[3] The Court expresses no opinion with regard to the ultimate merits of such an argument, but simply notes the absence of any facts or law that would render it objectively frivolous.

14

deficiency was severe enough to oblige Plaintiffs' counsel to voluntarily dismiss the case. The Court finds that it was.

First, the complaint contains no factual allegations that could support a claim of age discrimination, either directly or under the *McDonnell-Douglas* burden shifting framework. The complaint admits most of the relevant facts surrounding Plaintiffs' loss of Ms. Pickett, but claims that this was a "bogus" reason for their termination because: (1) Defendants did not discipline the Cloudburst house manager, whom Plaintiffs claim was responsible for informing them of Ms. Pickett's absence; (2) Defendants did not discipline their supervisor, Rhonda Braswell, who "should have had knowledge of the disabled patient's whereabouts, but nevertheless joined in and encouraged the search"; and, (3) "Ms. Moody and Mr. Weefur's genuine concern for the disabled patient, swift action, and leadership in enlisting the aid of other employees was commendable, and directly in-line with standard procedures and common sense." (Compl. 4). Finally, the complaint summarily concludes that Plaintiffs' age was the "real reason" for their termination, based entirely on the alleged fact that Defendants "harassed" Plaintiffs "because of their age" after they lost Ms. Pickett. The alleged "harassment" consisted of the following:

> . . . on May 13, 2009, TAHC harassed Ms. Moody and Mr. Weefur because of their age. That day, TAHC confronted Ms. Moody and Mr. Weefur about the May 13, 2009 events with rude gestures, such as raised eyebrows during the conversation, which conveyed the unmistakable sentiment that Ms. Moody and Mr. Weefur were just crazy old folk who simply did not get it. During the conversations, TAHC engaged in intimidating stare-downs, as if to assert some type of supreme authority. TAHC talked-down to Ms. Moody and Mr. Weefur with an arrogant, condescending tone. The gestures, tone, and discourse were humiliating and completely unprofessional. Upon information and belief, TAHC never directed such patronization at the younger employees. (Compl. 5).

That these allegations are frivolous requires little explanation. The house manager, whatever her duties, could not possibly have been responsible for Plaintiffs' believing they picked up and transported a patient who in fact never set foot in their vehicle; and, Plaintiffs'

15

supervisor could hardly be faulted for searching for a patient whom one of her subordinates had just told her went to bathroom on the premises, wearing a pink shirt, and never returned. As to Defendants' alleged "tone," and "raised eyebrows," *etc.*, the Court notes simply that such grievances, without more, are not the stuff of pleading in a federal lawsuit for employment discrimination.

Next, the grounds advanced by Plaintiffs in opposing sanctions and summary judgment make clear that they have no more evidence of age discrimination now, after a years' worth of discovery, than the day they filed the complaint. Plaintiffs' briefs on these issues each identify the same four allegations as evidence of age discrimination. First, Plaintiffs allege that they were replaced by younger employees. (Def.'s Resp. Sanctions 3); (Def.'s Resp. Summ. J. 5). As discussed above, however, this fact does not raise an inference of discrimination unless Plaintiffs were meeting their employer's legitimate expectations, which Plaintiffs concede they were not.

Second, Plaintiffs reiterate that Rhonda Braswell was not disciplined even though she was allegedly also responsible for knowing Ms. Pickett's location. (Def.'s Resp. Sanctions 3); (Def.'s Resp. Summ. J. 4-5). In addition to the inherent illogic of this argument discussed above, discovery has revealed that its factual premise is faulty as well. Contrary to Plaintiffs' assertions, Defendant Lyvers testified that Braswell's responsibilities did not include monitoring the location of individual patients. (Lyvers' Dep. 48, ECF No. 39-2, Ex. 2).

| Ostendorf: | "As a supervisor having greater responsibilities wasn't it also important for Rhonda Braswell to be aware of where the individuals were? |
| --- | --- |
| Lyvers: | "No... it would not be her responsibility on a day by day [sic] to know where everybody is. It's more the responsibility of the people working with that case." |

In continuing to argue that Braswell "has even more responsibility," Plaintiffs neither acknowledge Lyvers' testimony nor offer evidence to refute it.

Third, Plaintiffs allege that Defendants "[do] not fire employees for worse conduct." In support, they allege that an employee named Mark Breaux, "was not initially fired for allegedly yelling profanities at an intellectually disabled individual under the Arc's care." (Def.'s Resp. Sanctions 3); (Def.'s Resp. Summ. J. 5). Plaintiffs neglect, however, to mention Breaux's age, or explain how he was in any other way similarly situated with them. Indeed, they make no effort whatsoever to explain how this allegation raises an inference of age discrimination.

Finally, Plaintiffs allege that "Lyvers... admitted that even if plaintiffs had complied with the Arc's policy for locating missing individuals, they still would have been fired." (Def.'s Resp. Sanctions 3); (Def.'s Resp. Summ. J. 4-5). The Court does not fully understand the thrust of this argument. Plaintiffs offer no explanation of what policy this alleged "admission" refers to, or how the statement in any way indicates age discrimination. Nevertheless, regardless of what policy the statement does refer to, it manifestly does not refer to the policy against losing elderly, disabled patients, which Plaintiffs were terminated for violating.

Incredibly, Plaintiffs conclude their summary judgment opposition by asserting that they "have additional information of age discrimination," which they then decline to share with the Court on the grounds that the preceding allegations are sufficient to create a jury issue, and that "the purpose of a summary judgment motion is not to prompt a plaintiff's entire trial strategy." *Id* at 5. As the Court has just demonstrated, however, no reasonable attorney could believe that the foregoing allegations create a triable issue of fact with respect to age discrimination; and, for this very reason, the Court does not find Plaintiffs' claim that they possess more evidence to be credible.

Therefore, based on the existing record, the Court can only infer that any reasonable attorney would have realized that this case was frivolous in its entirety *at least* by the close of

discovery, and that counsel's refusal to voluntarily dismiss the case after that point was objectively unreasonable. Accordingly, the matter will be set in for a hearing to determine whether sanctions should be imposed on Plaintiffs' counsel for refusing to voluntarily dismiss the case after discovery revealed no additional evidence of age discrimination.

## IV. CONCLUSION

Accordingly, an order shall enter GRANTING Defendants' Motion For Summary Judgment (ECF No. 34), DENYING AS MOOT Defendants' Motion To Quash (ECF No. 30), and GRANTING IN PART and SETTING IN FOR HEARING IN PART Defendants' Motion For Sanctions (ECF No. 32).

Dated this 8th day of June, 2011

BY THE COURT:

/s/
James K. Bredar
United States District Judge