IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LORENDA MOODY, *et al.*, | * | |
| Plaintiffs | * | |
| v. | * | CIVIL NO. JKB-09-3228 |
| THE ARC OF HOWARD COUNTY, INC., *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Lorenda Moody and Clarence Weefur ("Plaintiffs") brought this suit against The Arc of Howard County, Inc., Debbie Wagner, and Naomi Lyvers ("Defendants"), alleging age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"). The Court awarded summary judgment to Defendants. (Order, ECF No. 42). Defendants now move for sanctions against Plaintiffs' Counsel, Jason A. Ostendorf, for alleged violations of Fed. R. Civ. P. 11. The issues have been briefed and the Court has conducted a hearing on the matter. For the reasons stated below, Defendants' Motion For Sanctions (ECF No. 32) is GRANTED.

**I. BACKGROUND**

This Court first considered Defendants' motion for sanctions against Plaintiffs' Counsel in a memorandum opinion and order entered on June 8, 2011 (ECF No. 41). The Court denied the motion in part, and set in a hearing to resolve the question of whether sanctions should be imposed on Plaintiffs' Counsel under Fed. R. Civ. P. 11 on the following two grounds: (1) his

1

refusal to move to dismiss this suit after discovery revealed no evidence of age discrimination; and (2) his refusal to move to dismiss the claims against individual defendants Debbie Wagner and Naomi Lyvers after Defense Counsel provided him with controlling authority from this circuit, holding that individuals cannot be sued under the ADEA. The Court conducted a hearing on these matters on June 16, 2011.

This memorandum sets out the Court's final ruling on sanctions in light of the June 16th hearing. The facts of this case and the background of Defendants' motion for sanctions are set out in the Court's previous memorandum opinion (ECF No. 41) and will not be repeated here.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 11(b) states in pertinent part:

> By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery...

A court considering sanctions under Rule 11 must evaluate an attorney's conduct under a standard of objective reasonableness. *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002). Conduct violates Rule 11 if an objectively reasonable attorney "in like circumstances could not have believed his actions to be legally justified." *Id.* (internal quotations omitted). Specifically, a legal contention violates Rule 11 when it "has absolutely no chance of success

under the existing precedent," and is unsupported by any "non-frivolous argument" for deviating from that precedent. *See In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998); Fed. R. Civ. P. 11(b)(2). A district court's decision to impose sanctions is discretionary. *Chaudry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir. 1999).

## III. ANALYSIS

### A. Evidence

The Court found in its previous memorandum that the evidence of age discrimination adduced by Plaintiffs in opposition to summary judgment was so deficient that any reasonable attorney would have realized that the case was frivolous. After affording Counsel every opportunity to explain his position at the June 16th hearing, the Court is satisfied that its initial finding was correct.

At the sanctions hearing, Counsel identified four pieces of evidence that he argued would allow a reasonable jury to infer that his clients were fired from their jobs because of their age. These were: (1) Lyvers' statement that Plaintiffs would have been fired even if they had complied with The Arc's policy on "locating missing individuals" (12:23-13:6)[1]; (2) the alleged fact that when Defendants spoke to Plaintiffs after they had temporarily lost one of the patients under their care, Defendants "were raising their eyebrows" and "talking in a very condescending tone" (16:1-3); (3) the fact that Plaintiffs were replaced with younger employees (15:25-16:1); and (4) Counsel's contention that Plaintiffs "had been stellar employees for, I think, over a decade each" (21:10-11). The Court has already explained why these allegations, and others proffered by Plaintiffs in earlier submissions, are insufficient to create a *prima facie* case of age discrimination, and why it was objectively unreasonable for Counsel to contend otherwise. (Mem., ECF No. 41). In response to that ruling, which relied heavily on Plaintiffs' inability to

---

[1] Citations to page and line number refer to the transcript of the sanctions hearing on June 16, 2011.

3

satisfy the "legitimate expectations" prong of the *McDonnell-Douglas* "burden-shifting" analysis, Counsel devoted the bulk of his time at the hearing to arguing that Plaintiffs should not be required to meet that prong. However, Plaintiffs' suit would be no less frivolous had they made a *prima facie* case (which they have not), because they have offered no evidence whatever to rebut Defendants' proffered legitimate reason for firing them.

Defendants alleged that they fired Plaintiffs for negligently losing track of a patient in their care and then fabricating a story about bringing the patient to Defendants' facility. This alone satisfied Defendants' burden, as the employer's burden is one of production only. Nevertheless, the Court finds that all the evidence in this case overwhelmingly demonstrates that Defendants' proffered account of the terminations is true. Under *McDonnell-Douglas*, Plaintiffs were then obligated to prove that this reason was merely a pretext for age discrimination. Not only did Plaintiffs offer no evidence whatsoever that could prove the reason pretextual, but they admitted the conduct that Defendants allege was the reason for their terminations. And, all of this occurred *before* Defendants filed their Rule 11 motion, making Counsel's decision to continue to litigate *after* the motion was filed inexplicable.

Counsel's argument at the hearing regarding Defendants' legitimate expectations could possibly be construed as applying to pretext as well. In the interest of giving Plaintiff's Counsel the benefit of every possible doubt in this matter, the Court will therefore entertain the argument in the context of the "pretext" prong of *McDonnell-Douglas*. The argument was based on the following statement, which Counsel elicited from Defendant Lyvers during her deposition:

> Q: Even if my clients had of [sic] complied with today's policy, you still would have fired them?
>
> A: Yes.

(Pl.'s Resp. Sanctions 3); (Pl.'s Resp. Summ. J. 4-5). Through some problematic leaps of logic, Counsel has interpreted this statement as an admission that Defendants' "legitimate expectations were not relevant to [the employer's] decision," and (the Court infers) that their stated reasons were a pretext. (18:21-22). As best the Court can discern, Counsel's reasoning was this: the policy in question relates to a particular protocol employees are expected to follow when a patient is missing (Pl.'s Resp. Summ. J. 4) (identifying policy as one "for locating missing individuals); a reasonable jury could conclude that this was the only policy relevant to Plaintiffs' alleged negligence (19:23-24); it is a "common sense premise... that an employer's policies are a statement of their legitimate expectations" (14:11-12); thus, a reasonable jury could conclude that Defendants' only legitimate expectations of Plaintiffs when they lost their patient was that they follow this procedure; since Lyvers stated that Plaintiffs would have been fired even if they had followed the procedure, Defendants' legitimate expectations were irrelevant to their decision (and, presumably, their stated reasons for Plaintiffs' terminations were disingenuous) (18:21-22).

Even bending over backwards to view this matter in the light most favorable to Plaintiff's Counsel, the Court still finds that Counsel's allegations cannot be stitched together into a coherent legal theory. Apart from the fact that there is not a scintilla of evidence anywhere in the record to suggest that Defendants' policy conveyed any such message, far more important is the fact that Defendants have *never* alleged that they fired Plaintiffs for failing to follow a policy "for locating missing individuals." Rather, they have always maintained that they fired Plaintiffs for allowing an individual to *become* missing in the first place and then telling fictitious stories to their supervisors about it. *See, e.g.,* (Pl.s' Termination Letters, ECF Nos. 34-13 & 34-14).

Moreover, even assuming that Plaintiffs had made a *prima facie* case, Counsel's persistence in pressing the suit would not be any less sanctionable. As the Fourth Circuit has noted,

> A plaintiff's ability to meet this low threshold does not render sanctions inappropriate for the continued litigation of an otherwise patently frivolous case. It will often become plainly apparent in discovery that the employer has produced a legitimate explanation for the employment decision of which plaintiff complains. It is then plaintiff's burden to present evidence that the employer's explanation is a mere pretext for... discrimination. Clearly, if plaintiff has no evidence whatsoever of pretext, the continued litigation of plaintiff's case can be frivolous despite the existence of a prima facie case.

*Blue v. U.S. Department of Army*, 914 F.2d 525, 536 (4th Cir. 1990). Neither Defendants' raised eyebrows, nor Plaintiffs' alleged "stellar" job performances, nor the age of Plaintiffs' replacements suggest that they were not in fact fired for their alleged negligence. Even assuming a prima facie case, then, Counsel's continual litigation of the matter with no evidence of pretext was frivolous.

In short, for Plaintiffs' Counsel to assert that he was entitled to take this case to a jury based on the evidence cited above, *after* receiving Defense Counsel's notice of Rule 11 violations, was and is preposterous. As a result, the parties' resources, and those of this Court, have been wasted. To deter him from similar practice in the future, Plaintiff's Counsel must be sanctioned.

    **B.**    **Individual Liability**

The Court found in its previous memorandum (ECF No. 41) that it was objectively unreasonable for Counsel to persist in asserting claims on behalf of his clients against their individual supervisors, because the settled law of the Fourth Circuit, beginning with the case of *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir. 1994), has long rejected individual liability under the ADEA and other federal EEO laws. Again, after hearing Counsel's

explanation of his conduct at the sanctions hearing, the Court is even further convinced that this finding is correct.

In a letter to the Court submitted the day before the sanctions hearing, Counsel attempted to justify his assertion of individual liability by arguing that a "minority view" exists, contrary to Fourth Circuit precedent, that the ADEA does in fact create a right of action against individual supervisors, and that the Supreme Court might adopt this view on appeal. (Ostendorf Letter, ECF No. 43). He retreated from this position somewhat at the hearing, however, when Defense Counsel cited cases from every circuit in the country, showing that, while such a minority view may have existed previously, the circuits are now unanimous in rejecting individual liability under federal EEO laws. Plaintiffs' Counsel nevertheless continued to insist that sanctions were inappropriate because the Supreme Court had not yet ruled on the issue. In support of this argument, Counsel invoked the image of the civil rights attorneys of the 1950s who relentlessly pressed novel legal theories in the face of adverse precedents like *Plessy v. Ferguson*, 163 U.S. 537 (1896).[2] When the Court pressed Counsel to explain why he had not discovered the newer circuit court precedent superseding the alleged minority view, Counsel proffered that he had taken Defendants' Rule 11 motion as a personal attack, which he did not take seriously, and had endeavored to spend as little time on it as possible.

First, after reviewing the cases cited by Defense Counsel, the Court agrees that they demonstrate that every circuit has now concluded that the statutory definition of "employer" contained in Title VII, the ADEA, and the ADA, does not extend to individual supervisors unless

---

[2] The Court here has reconstructed what it assumes Counsel meant to say. Actually, believing that it overruled the *Dred Scott* decision, Counsel cited *Plessy v. Ferguson* as an example of the Supreme Court overruling a settled but unjust precedent. This, of course, was not the case. *See, infra* note 6. Rather, *Plessy* is notorious for endorsing the constitutionality of racial segregation, and was itself overruled in *Brown v. Board of Education*, 347 U.S. 483 (1954).

7

they independently meet all of the statute's criteria.³ Plaintiffs' Counsel, on the other hand, cited only two cases in his letter to the Court: one was *Birkbeck* itself, which cited some contrary rulings from other courts; the other, decided the same year in the District of New Jersey, was *Bishop v. Okidata, Inc.*, 864 F.Supp. 416, 423 (D.N.J. 1994). As all the authority cited by Defense Counsel postdates both *Okidata* and the contrary opinions cited in *Birkbeck*, the "minority view" on which Counsel purports to rely has clearly been superseded.

When the Court prompted Plaintiffs' Counsel to respond to Defense Counsel's proffer of this overwhelming authority, Plaintiff's Counsel could respond only that: "As to all the case law from all the other circuits, I wasn't aware of that before today." (28:19-21). When the Court asked, rhetorically, whether it was not Counsel's responsibility to conduct research and discover the current state of the law regarding individual liability under the ADEA, Counsel deflected the question, responding that:

> I did read the *Birkbeck* decision at the time of the Rule 11 Notice. I read the part that said that there were other courts that disagreed. I did some research finding some of the courts in the other circuits that disagree with the position. As to Your Honor's question of why didn't I put this in the response to the motion for sanctions, I don't have a good reason for that.

(23:1-7).

These statements alone might be enough to warrant the imposition of sanctions, as Rule 11 requires that even arguments for a change in existing law be based on a "reasonable inquiry."

---

³ *See Fantini v. Salem State College*, 557 F.3d 22 (1st Cir. 2009) (holding that Title VII definition of "employer" does not include individuals); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2nd Cir. 1995) (same); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061 (3rd Cir. 1996) (same); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir. 1994) (holding that ADEA definition of "employer" does not include individuals); *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996) (same); *Hiler v. Brown*, 177 F.3d 542 (6th Cir. 1999) (holding that Title VII definition of "employer" does not include individuals and noting that the same definition is contained in the ADEA); *Silk v. City of Chicago*, 194 F.3d 788, 797 (7th Cir. 1999) (recognizing that Seventh Circuit case law does not allow individual liability under Title VII or the ADA); *Powell v. Yellow Book USA*, 445 F.3d 1074, 1079 (8th Cir. 2006) (recognizing that Title VII does not create individual liability); *Miller v. Maxwell's Int'l. Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (holding that ADEA definition of "employer" does not include individuals); *Butler v. City of Prairie Village*, 172 F.3d 736 (10th Cir. 1999) (no individual liability under Title VII or ADA); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (no individual liability under Title VII, ADEA, or ADA); *Gary v. Long*, 59 F.3d 1391, 1400 (D.C. Cir. 1995) (no individual liability under Title VII).

Fed. R. Civ. P. 11(b)(2). By acknowledging his ignorance of current case law, Plaintiffs' Counsel announced to the Court that he had not performed a reasonable inquiry. *See Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986) (writing that Rule 11 places a burden on attorneys to "study... read, and consider [the law] before litigating"); *Burda v. M. Ecker Co.*, 2 F.3d 769, 775 (7th Cir. 1993) (stating that an attorney who completely ignores the settled authority cited by his opponent has not conducted a reasonable inquiry). Rather, in shirking this most basic responsibility, Plaintiffs' Counsel has "[put] the burden of study and illumination on the defendants [and] the [C]ourt." *See Wahl*, 787 F.2d at 1154.

Undaunted, Counsel pressed ahead by arguing that, even despite the new circuit precedents, he should not be sanctioned, because:

> The Supreme Court has not yet addressed the issue. There's a chance that if they do address the issue they might disagree with all the other circuits. I don't understand why the individuals who actually discriminate should be protected by the law, which is what the standard does. (28:14-19).

Counsel attempted to buttress this argument by observing:

> I'm not trying to make this case seem as important as the issues discussed in *Dred Scott*, but there was a time when the circuits were all conclusive on a specific issue that was not very fair to African Americans, but some attorney took it to the Supreme Court and the Supreme Court displayed all of these other circuits being in agreement, they reversed it.[4]

Had Counsel given more consideration to the law of our circuit, he might have discovered that this very dilemma was the subject of extensive treatment in the case of *Blue v. U.S. Dept. of Army*, 914 F.2d 525 (4th Cir. 1990), and that, while sympathetic to his concerns, the Court's decision ultimately rejected the completely unbounded approach that he appears to espouse. Because the opinion in that case eloquently captures the very point that this Court has

---

[4] Of course, no attorney ever did any such thing; *Dred Scott* was overruled by the Fourteenth Amendment to the United States Constitution, not by the Supreme Court. *See McDonald v. City of Chicago*, 130 S.Ct. 3020, 3060 (U.S. 2010); Clayton E. Cramer & David B. Kopel, *Shall Issue: The New Wave of Concealed Handgun Permit Laws*, 62 TENN. L. REV. 679, 747 n. 270 (1995). But, Counsel's point is taken, nevertheless.

attempted, thus far unsuccessfully, to convey to Counsel, the Court believes that an extended quotation is appropriate:

> ... We are mindful of the role that federal courts have played in the struggle for equal opportunity under law. It was in the federal courtroom that litigation brought to life the abstract guarantees of racial justice. That development has not been a static one. Many rights and remedies once thought novel and unprecedented won the approval of the Supreme Court of the United States. The most important of these cases were, certainly at the time, the subject of the most intense debate and controversy. (citations omitted)
>
> At no time during this passage was the courtroom debate, for all its intensity, stilled by the specter of sanctions. The fact that a civil rights litigant pressed a legal position which courts had previously rejected was not thought to constitute a species of sanctionable conduct. If it had been, the parties and counsel who in the early 1950s brought the case of _Brown v. Board of Ed.,_ 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), might have been thought by some district court to have engaged in sanctionable conduct for pursuing their claims in the face of the contrary precedent of _Plessy v. Ferguson,_ 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896). The civil rights movement might have died aborning.
>
> The case before us was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e _et seq._ The Supreme Court has cautioned district courts not to casually impose sanctions on Title VII plaintiffs and their counsel:
>
>> [I]t is important that a district court resist the understandable temptation to engage in _post hoc_ reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.
>
> _Christiansburg Garment Co. v. EEOC,_ 434 U.S. 412, 421-22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).
>
> At the same time, however, no litigant can be allowed to abuse federal courts or opposing litigants with impunity. Like all other litigants, civil rights litigants face the prospect of sanctions if they pursue patently frivolous lawsuits. "Racial or religious discrimination is odious but a frivolous or malicious charge of such conduct ... is at least equally obnoxious." _Carrion v. Yeshiva Univ.,_ 535 F.2d 722, 728 (2d Cir.1976). Equality under law means that the rules of law, including those concerning sanctions, apply to everyone. See _Oliveri v. Thompson,_ 803 F.2d 1265, 1280-81 (2d Cir.1986). It would be an irony if the concept of equality under law, so fundamental to the goal of civil rights, were underwritten with exceptions for Title VII litigants from the legal rules that apply to all others. The authority which federal courts possess, an authority often summoned to the side of racial justice, is

an authority built upon respect for judicial process. That authority cannot, in the long run, be effectively invoked on behalf of civil rights enforcement if civil rights litigants could themselves disregard it with impunity. A careful balance must be struck between chilling Title VII claims, so central to the concept of equal opportunity, and saying that accusations, no matter how unfounded, may be brought immune from the usual rules of law which govern litigants.

An even greater irony lies in the fact that, a few years after *Blue*, the Supreme Court itself issued an opinion on this point, which, on the surface, would seem to provide support for Counsel's position, but which on closer reading proves ultimately to reject it. In that case, *McKnight v. General Motors Corp.*, 511 U.S. 659 (1994), the Court held that the Seventh Circuit had erred in imposing sanctions on an attorney for appealing the dismissal of a claim that was foreclosed by Seventh Circuit precedent. It wrote:

> ... if the only basis for the order imposing sanctions on petitioner's attorney was that his retroactivity argument was foreclosed by Circuit precedent, the order was not proper. As petitioner noted in his memorandum opposing dismissal and sanctions, this Court had not yet ruled on the application of § 101 to pending cases. Filing an appeal was the only way petitioner could preserve the issue pending a possible favorable decision by this Court. Although, as of September 30, 1992, there was no circuit conflict on the retroactivity question, that question had divided the District Courts and its answer was not so clear as to make petitioner's position frivolous.

While this brief opinion certainly confirms Counsel's assertion that an attorney is entitled, under certain conditions, to raise arguments contrary to existing precedent in order to preserve them for appeal, it manifestly does not hold that an attorney may take *any* position contrary to circuit precedent simply because there is a metaphysical possibility of prevailing before the Supreme Court. Rather, the opinion implicitly confirms the limits on an attorney's license to flaunt precedent by observing that the issue petitioner had raised was *not* so clearly resolved as to foreclose non-frivolous argument.

The Supreme Court's opinion in *McKnight*, the strongest support for Counsel's position that this Court can find, at bottom does nothing to alter the plain requirements of Rule 11.

11

Nothing in the opinion excuses attorneys from conducting basic research or from supporting novel legal theories with non-frivolous arguments. If it were otherwise, no law could ever be settled. Even the precedents of the Supreme Court itself could not justify sanctioning an attorney who disregarded them, because there is always a possibility that the Supreme Court might reverse itself.

This entire issue, however, is a red herring, because Plaintiffs' Counsel, despite doggedly pressing his right to argue for change in the law, has never once offered an argument as to why the circuit court decisions rejecting individual liability should be overruled. In his briefs in opposition to sanctions and summary judgment, Counsel argued that the individual defendants in this case could be held liable as "agents" of The Arc. This was the precise construction rejected by the Fourth Circuit in *Birkbeck* on the grounds that Congress intended to insulate small businesses and individuals from crushing liability. 30 F.3d at 510. In making that argument, however, Counsel never once acknowledged or cited *Birkbeck* or any other authority, or explained where the Fourth Circuit had erred in its construction of the ADEA. Since filing those briefs, Counsel has offered no argument on the matter at all, except to assert that he should not be sanctioned. The only thing approaching such an argument was Counsel's statement at the hearing that, "I don't understand why the individuals who actually discriminate should be protected by the law, which is what the standard does." (28:14-19).

It should be obvious that an attorney's admission that he does not understand the policy behind a given law cannot possibly constitute a non-frivolous argument for changing that law, and the Court suspects that even Plaintiffs' Counsel realizes this. In fact, the Court finds it wholly implausible that Counsel ever had any notion of arguing for a new construction of the ADEA. Rather, the Court believes that a more likely explanation for Counsel's conduct is that,

in his own words, "I didn't take the motion seriously. I wanted to spend as little time on it as possible, because I did see it as a personal attack." (34:10-12).

Regardless, the case law clearly establishes that: (1) if an attorney hopes to work a change in the law on behalf of his client, he may not simply pretend that adverse precedent does not exist, but must *actually make* a non-frivolous argument for change; and (2) if an attorney makes no such argument, settled adverse Circuit precedent is quite sufficient to justify sanctions.[5] Here, every circuit in the country has clearly rejected Counsel's position and he has made no argument whatever – not even a frivolous one – for revisiting those decisions.

As it explained at the hearing, the Court is deeply troubled by Counsel's refusal to recognize that issues which have been decided unanimously by the United States Circuit Courts of Appeal are settled law. Flowing from this refusal is Counsel's apparent belief, which is equally troubling, that an attorney has no obligation to learn what the state of the law *is* before filing suit, so long as there is no Supreme Court decision directly on point. In the present matter, the result of these errant beliefs has been that two individuals, Defendants Wagner and Lyvers, have been improperly forced to bear the not insubstantial anxieties and expense of litigation. The Court has no difficulty finding that Counsel's persistence in pressing his clients' claims against these individuals, in contradiction of the settled precedent of every circuit in the country, was objectively unreasonable and worthy of sanction.

---

[5] *See, e.g., In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988) ("The party against whom sanctions would be imposed must actually make the reasonable argument, not merely assert after-the-fact that a reasonable argument *could* have been made"); *Hoatson v. New York Archdiocese*, 280 F.App'x. 88, 92 (2nd Cir. 2008) (unpublished) (sanctions appropriate where attorney offered no argument for reversing law that was "well-settled in this circuit and in all others to have reached the question") (internal citations omitted); *Friedler v. Equitable Life Assur. Soc. of U.S.*, 86 F.App'x. 50, 56 (6th Cir. 2003) (unpublished) (sanctions appropriate where "counsel pursued a claim that he should have known was unsupported by existing law and he made no argument to change it); *Collie v. Kendal*, 220 F.3d 585 (Table) at 2 (5th Cir. 2000) (unpublished) (sanctions appropriate where attorney's argument was no more than an assertion "that long-standing precedent [is] wrong and should be changed"); *Kuroiwa v. U.S.*, 351 F.App'x. 238, 241 (9th Cir. 2009) (unpublished) (Rule 11 sanctions appropriate where counsel advanced legal theory plainly rejected by Ninth Circuit precedent).

C.     **Award of Sanctions**

District courts must consider four factors in determining the amount of any monetary award under Rule 11. *In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990). These are: (1) the reasonableness of any requested costs or attorney's fees; (2) the minimum amount necessary to deter the sanctioned attorney from future misconduct; (3) the sanctioned attorney's ability to pay; and (4) any other factors the court deems relevant. *Id*.

Defense Counsel proffered at the sanctions hearing that Defendants have incurred $63,113 in defending this suit since the expiration of the Rule 11 safe harbor period on March 15, 2011. (8:25-9:12). The Court does not find it necessary, however, to scrutinize this claim for reasonableness, because the other factors that the Court must consider, as explained below, do not permit an award of that size. The award, rather, will be constrained by the second and third factors. Plaintiffs' Counsel has proffered that he earns approximately $35,000-$40,000 a year, that he is currently a solo practitioner, and that he has been in practice for about four years. (35:7-17). In view of his relative youth, inexperience, and modest means, the Court finds that Plaintiffs' Counsel could likely be deterred from future Rule 11 violations by a considerably smaller award than that requested by Defense Counsel. While the Court is sympathetic to Defendants' grievances and recognizes the legitimacy of their complaint, making them whole is not the priority of the law in this context. *Id* (stating that compensating the "offended parties" is not the primary purpose of Rule 11 sanctions). Having considered all the facts and circumstances submitted by the parties, the Court finds that a sanction in the amount of $5,000 is the minimum penalty that will deter Plaintiffs' Counsel from continuing in his present course of conduct. The Court further finds that this amount, while imposing a significant burden, is within Counsel's means to pay. Finally, the Court finds that, even at modest rates, the work done by

Defense Counsel in this case since the expiration of the Rule 11 "safe harbor" period (including motions for sanctions, summary judgment, and exclusion of evidence) would come to considerably more than this amount. The Court shall therefore sanction Plaintiffs' Counsel in the amount of $5,000.

## IV. CONCLUSION

A license to practice law brings with it substantial responsibilities, and one of those is an obligation of prudence when bringing and pressing a claim. Attorneys are entitled, and sometimes even obligated, to sail into shallow waters as investigation and discovery reveal weaknesses in the factual and legal theories of a case. However, once the ship has not just bumped a shoal or two, but instead has collided with rocks and begun taking water, the voyage is over and counsel is required to drop his sails. A reasonable and prudent attorney would have known and accepted that his claims were finished -- that his voyage had ended -- upon reading and reflecting upon the Rule 11 notice filed on February 22, 2011. It was clear then that the plaintiffs had no case, legally or factually. Under generous rules of procedure, safe harbor remained available to Mr. Ostendorf even after this grounding, see Fed. R. Civ. P. 11(c)(2), and had he elected that course and dismissed his claims before March 15, 2011, he would have avoided the wreck that has now ensued.

Counsel continued to litigate long after an objectively reasonable attorney, "in like circumstances could not have believed his actions to be legally justified," and would have quit. *Hunter*, *Id.*, at 153. His imprudence has unfairly imposed costs on his clients' opponents. Accordingly, an order shall enter GRANTING Defendants' Motion For Sanctions (ECF No. 32), and SANCTIONING Plaintiffs' Counsel, Jason A. Ostendorf, in the amount of $5,000, for violation of Fed. R. Civ. P. 11.

Dated this 7th day of July, 2011

                                        BY THE COURT:

                                        _____/s/_____

                                        James K. Bredar
                                        United States District Judge